William J. Regan, S.
On February 15, 1955 James J. Lamp-
shire executed his last will and testament, pertinent portions of which provide:
“second: I give, devise and bequeath to my wife, Catherine M. Lampshire, all the rest, residue and remainder of my property, real or personal, of whatever nature and wheresoever situate, which I might own or have the right to dispose of at the time of my death.
‘ ‘ third : In the event my wife should predecease me or we should die under such circumstances whereby the survivor cannot be determined as between us, then and in that event I give, devise and bequeath said residue in equal shares, per stirpes, to the children of my wife as hereinafter named: mrs. eileen
SCHMIDT, MRS. LOIS OWCZARZAK, MARY LOU KOLB, DAVID KOLB.
‘ ‘ lastly I hereby appoint my wife, Catherine m. lampshire, 107 Grosman St., Buffalo, N. Y., and if she be unable to so serve, *333 mbs. lois owozarzak, to serve without bond, executrix of this, my last Will and Testament: hereby revoking all former wills by me made.”
On July 7, 1960 James J. Lampshire and Catherine M. Lampshire, his wife, were divorced.
Effective September 1, 1967 the Legislature of this State promulgated EPTL 5-1.4: “ (a) If, after executing a will, the testator is divorced, his marriage is annulled or its nullity declared or such marriage is dissolved on the ground of absence, the divorce, annulment, declaration of nullity or dissolution revokes any disposition or appointment of property made by the will to the former spouse and any provision therein naming the former spouse as executor or trustee, unless the will expressly provides otherwise. ’ ’
Prior to this section, case law in this State provided for no revocation in cases of divorce but insisted that the then existing statutory provisions for revocation were exclusive. (Matter of Sussdorff, 182 Misc. 69.) In proposing this section the revisers indicated that any reliance on the argument that testator could have altered his will after a divorce was not convincing because it is well conceded that the public is lax in making or revoking their wills. Evidently it was thought preferable to create a statutory presumption that would revoke provisions made to a divorced spouse, thus requiring any affirmative steps on the testator’s part to include a divorced spouse if he so desired.
New York is not the first 'State to take action in this regard. Some 14 States have statutes regarding this subject in different and varying language. For example, in Oregon and Georgia their statutes say that a divorce revokes the will entirely. Other States, including Alabama and Washington, say that the divorce revokes the prior will as to the divorced spouse. Most of the statutes in these States provide that the divorce “ revokes that part of the will making provision for the spouse.”
In the 'State of Missouri the statute provides: “ If, after making a will the testator is divorced, all provisions in the will in favor of the testator’s spouse so divorced are thereby revoked but the effect of the revocation shall be the same as if the divorced spouse had died at the time of the divorce. With this exception, no written will, nor any part thereof, can be revoked by any change in the circumstances or condition of the testator.” (Mo. Ann. Stat., § 474.420.)
In counsel’s memorandum referring to the Rookstool v. Neaf case (377 S. W. 2d 402 [Mo.]) he stated that the court held that the revocation should be the same as if the divorced spouse had died. However, in that Missouri case it was not *334 the court’s interpretation, it was, in effect, the exact language of the statute.
We must assume that the commission, in revising the law, considered the various forms of statutes in the different States. The statute as enacted did not in word or intent have any .reference to deeming the divorced spouse civilly dead.
In the case before us paragraph Second is revoked without any question. We are then concerned with the balance of the will. In paragraph Third there appears to be no ambiguity. Nowhere in the will does there appear to be what might be expressed as testator’s “ intentions ” except that derived from the definite statements made. Paragraph Third is predicated on a condition set forth therein and limited thereby. The expressed contingency not having occurred, the result is intestacy. In Matter of Imperato (44 Misc 2d 639) the court lays down good logic regarding the court’s power to speculate or conjecture on testator’s intentions when such guesswork is not definitely called for.
‘ ‘ The court should not make a new will based on speculation as to what the testator might have intended. ” (p. 641.)
‘ ‘ The fact that an event happened, prior or subsequent to the making of the will, which, as the will may indicate or disclose, was unknown or unforeseen and unprovided against by the testatrix, cannot affect the meaning of the language used.” (Matter of Tamargo, 220 N. Y. 225, 228.)
“ Courts have no power to create a testamentary disposition which is neither expressed nor necessary to be implied.” (Matter of Tamar go, supra, p. 231: cf. Herzog v. Title Guar. & Trust Co., 177 N. Y. 86, 92.)
“ To uphold a legacy by implication the inference from the will of the intention must be such as to leave no hesitation in the mind of the court and to permit of no other reasonable inference.” (Bradhurst v. Field, 135 N. Y. 564, 568; Matter of Benton, 244 App. Div. 56.)
“ None the less, the intention must be revealed by the language of the will. The words must be construed in order to find the sense in which they were used by the testator. They may not be perverted or disregarded in order to give effect to an intention which possibly the testator may have had but which is not revealed by the language used in the will.” (Matter of Nelson, 268 N. Y. 255, 258.)
Because of the recent effective date of this statute this case is one of first impression and in this court’s opinion should he decided upon the expressed language in the will. As stated above, the dispositive provisions of the will are limited by cer *335 tain conditions which, not having occurred, caused the result to be intestacy. In passing, it is quite possible that there has been a legislative gap in this statute, especially if it was enacted with the intention of considering the divorced spouse civilly dead. We are not prepared to take any liberties with the statute but must adhere strictly thereto.
The above problems do not concern us with regard to the last paragraph, wherein the wife is named executrix, “ and if she be unable to so serve ” some other person would be appointed. In conformance with our above decision and finding no room for construction, we find that Catherine Lampshire, because of her divorce and the statute, is unable to serve as executrix and therefore the alternate may so act.