IN the MATTER OF the ESTATE OF William J. GRAEF, Deceased:

Emma GARRETT, will proponent, Appellant,

v.

Mary McQUILLEN, will contestant, Respondent.

Supreme Court

*No. 83–1926. Argued April 2, 1985.—Decided May 29, 1985.*

(On certification from the court of appeals.)
(Also reported in 368 N.W.2d 633.)

For the appellant there were briefs by *John F. Lampert,* Fort Atkinson, and oral argument by *Mr. Lampert.*

For the respondent there was a brief by *W.E. Kiessling, Jr.* and *Kiessling & Lesperance,* Lake Mills, and oral argument by *W.E. Kiessling, Jr.*

SHIRLEY S. ABRAHAMSON, J. This appeal from a judgment of the circuit court for Jefferson county, John B. Danforth, circuit judge, is before the court on certification by the court of appeals pursuant to sec. 809.61, Stats. 1983–84.

This case raises the issue of the devolution of property under the following circumstances: The property is bequeathed to the testator's spouse with a gift over to another person[1] in the event the spouse predeceases the testator. The testator and the spouse are divorced after the execution of the will, and the spouse survives the testator. Sec. 853.11(3), Stats. 1983–84, bars the spouse from taking under the will.[2] The question posed by these

---

[1] I use the term "gift over" to mean a bequest to another person contingent upon the spouse predeceasing the testator.

[2] Sec. 853.11(3), Stats. 1983–84, provides as follows:

"(3) ANNULMENT OR DIVORCE. Any provision in a will in favor of the testator's spouse is revoked by an annulment of the marriage to such spouse or by an absolute divorce."

facts is who is entitled to the property which is the subject of a statutorily revoked bequest to the spouse and a gift over in the event of the death of the spouse. Does it pass as a gift over to the person named in the will even though the spouse has not predeceased the testator? Or since the spouse has not predeceased the testator does the gift over fail and the property pass according to the laws of intestacy?

The circuit court entered judgment declaring that William J. Graef's testamentary bequest to Pearl Graef, his wife at the time of the execution of the will but from whom he was divorced at the time of his death, was revoked under sec. 853.11(3), Stats. 1983–84, and that the gift over would not take effect since the contingency set forth in the will, namely that his wife, Pearl Graef, predecease him, did not occur. We reverse the judgment.

Sec. 853.11(3) revokes the will provision in favor of the divorced spouse. We conclude that the effect of sec. 853.11(3), for purposes of construing a will, is that the divorced spouse is, as a matter of law, presumed to have predeceased the testator. Accordingly, we hold, under the facts of this case, that since the contingency which the testator set forth, namely, that his wife predecease him, is presumed to have occurred, the gift over to the residuary beneficiary is given effect.

The parties agree on the facts. William J. Graef's last will and testament, executed on November 14, 1951, provided that upon his death his entire estate was to go to his wife, Pearl Graef,[3] but if she predeceased him or died within 6 months of his death, the estate was to be divided into three equal shares, one share to be distributed to his mother, one to his father, and one

[3] Paragraph 2 of the will provides as follows: "All the rest, residue and remainder of my property, both real and personal, which I now own or may hereafter acquire, I give, devise and bequeath to my wife, Pearl Graef, to be hers absolutely."

"to my wife's mother, Emma Garrett, of 1101 Genova Street, Houston, Texas."[4]

The testator and Pearl Graef were married in 1947 and were divorced in 1980. There were no children of the marriage. The testator did not remarry. The testator's father and mother predeceased the testator; the father died in 1963 and the mother in 1978. William J. Graef died testate on May 26, 1982. Both Pearl Graef and Emma Garrett survived the testator.

The parties stipulated that the draftsman of the will had no records or files which could supplement the will.

It is clear that the bequest to Pearl Graef is governed by sec. 853.11(3) and that under the terms of that statute the bequest is revoked. Sec. 853.11(3), Stats. 1983–84, provides that "[a]ny provision in a will in favor of the testator's spouse is revoked by an annulment of the marriage to such spouse or by an absolute divorce."[5]

---

[4] Paragraph 3 of the will provides as follows:

"In case my wife shall predecease me, or in case both of us die as the result of a common accident or catastrophe, regardless of which one shall die first, or in case my wife's death from any cause shall follow mine within six months, then and in that event my said will shall be considered and construed as though my wife had died before me; and in any of the events set forth in this paragraph I direct that the residue of my estate be divided into three equal shares and, I give, devise and bequeath to my father, Clayton G. Graef of Milwaukee, Wisconsin one share; to my mother, Theresa B. Graef of Milwaukee, Wisconsin one share; and to my wife's mother, Emma Garrett, of 1101 Genova Street, Houston, Texas one share."

[5] This section codifies the decisional law. Wis. Legislative Council Reports, vol. III, Judiciary Committee Bill on Probate Code, sec. 853.11, p. 65 (1969) 13 Leg. C. Rep. (1967–69). Prior to the enactment of the section, this court concluded that a divorce subsequent to the execution of the will revokes any provision in the will for the benefit of the ex-spouse because "[t]he

Although sec. 853.11(3) is clear with regard to the effect of the divorce on the bequest to the spouse (i.e., the bequest is revoked), the statute is not clear with regard to the effect which the statutory revocation of the bequest to the spouse has on the other provisions of the will.

Although the question of the devolution of property under the fact situation in the present case is one of first impression for this court, the question has arisen in other states. Apparently most courts have given effect to the gift over rather than have the property devolve according to the laws of intestacy. There appear, however, to be at least three potential approaches to the question: a case-by-case construction of the phrase "a provision in a will *in favor of the testator's spouse*" in sec. 853.11(3), a case-by-case examination of the testator's intent, and the creation of a rule of construction applicable to cases like the case at bar, namely, a rule of will construction that the word "predecease" in the will means the death of the spouse, or a rule of statutory construction that sec. 853.11(3) makes divorce the equivalent of the death of the spouse. We now consider the ramifications of each of these approaches.

One approach in this type of case is to treat a gift over to a blood relative of the spouse (but not of the testator) or a natural bounty of the spouse's affections as a "provision in a will *in favor of the testator's spouse*" and therefore consider the provision revoked by the very terms of sec. 853.11(3).

changed condition and circumstances of a [divorced] testator thus brought about are of a nature and, in effect, of such probative force as to imply that the testator intended that the testamentary provisions theretofore made for the wife should become revoked thereby." *Will of Battis,* 143 Wis. 234, 240, 126 N.W. 9 (1910). See also *In re Estate of Kort,* 260 Wis. 621, 51 N.W.2d 501 (1956).

We are not persuaded that the legislature intended sec. 853.11(3) to be interpreted as stating as a matter of law that the phrase "in favor of the testator's spouse" includes not only the revocation of bequests to the spouse but also the revocation of bequests to the spouse's parents, siblings, children, or other natural bounties of the spouse's affections. The legislature could have enacted a law that revoked every will provision that directly or indirectly might be of benefit or advantage to the spouse or which might be favorable to the spouse. The legislature did not enact such a law.

Even if we were to interpret "in favor of the testator's spouse" very broadly to include the revocation of bequests to persons close to the spouse—and we do not so interpret the statute—no extrinsic evidence was presented in this case (and we are not presented with the question of whether such evidence is admissible) to show that the bequest to Emma Garrett was in fact in favor of the testator's spouse. We would be engaging in confabulation were we to say that the bequest is in favor of the spouse. We know nothing about the relation between the spouse and her mother. We cannot therefore conclude that as a matter of fact the bequest is in favor of the spouse and is revoked by sec. 853.11(3).

A second approach to deciding the devolution of the property which is the subject of the gift over would be to ascertain and effectuate the intent of the testator. Intent is discoverable, according to our cases, by considering the language of the will, the entire testamentary disposition, the circumstances at the time of the will's execution, rules of will construction, and extrinsic evidence. *See* 2 MacDonald, *Wisconsin Probate Law*, secs. 15A:4, 15A:5 (8th ed. 1983).

Many courts use this "intent of the testator" approach, and in most cases the courts conclude that the testator

intended that the gift over be given effect. The courts reason that the testator intended to die testate and that the testator intended that the divorce which revoked the bequest to the wife be equivalent to the death of the spouse.[6]

Thus in *Steele v. Chase,* 151 Ind. App. 600, 281 N.E.2d 137 (1972), the will bequeathed the estate to the spouse, but if the spouse predeceased the testator, one-half of the estate would go to his stepson (his wife's son from a previous marriage) and one-half would go to the testator's brothers. After execution of the will, the parties divorced; the wife survived the testator; and the heirs challenged the bequest to the stepson. The court upheld the testamentary gift to the stepson, explaining: "[I]t would be contrary to the intention of such testator for a court to disregard the named beneficiary and permit the estate to pass by intestacy." 281 N.E.2d at 140.

Similarly in *Lamontagne v. Hunter,* 341 So. 2d 1074 (Fla. 2d Dist. Ct. App. 1977), which also involves substantially the same facts as this case, the court upheld a gift over to the children of the divorced spouse against a challenge by the heirs. As it had in previous cases, the court concluded that the testator's clear intent was that the stepchildren receive the residuary estate if the wife were not available to take under the will. The court said: "The will controls; the divorced wife is out; and [the stepchildren] take as contingent residuary legatees,

[6] See, *e.g., Porter v. Porter,* 286 N.W.2d 649 (Iowa 1979); *Jones v. Brown,* 219 Va. 599, 248 S.E.2d 812 (1978); *Calloway v. Estate of Gasser,* 558 S.W.2d 571 (Tex. Civ. App. 1977); and cases collected in Annot., *Wills—Failure of Gift to Divorced Spouse,* 74 A.L.R.3d 1108, 1112–20 (1976). While we cite cases as examples of the specific approaches, the language of the cases usually indicates the courts were using a combination of approaches and the opinion may be unclear as to the approach ultimately relied upon by the court.

the contingency in law having occurred." 341 So. 2d at 1075.

Courts have also construed the will as demonstrating that the testator intended that a gift over to a charity be given effect even though the divorced spouse survives the testator. Thus in *First Church of Christ, Scientist v. Watson,* 286 Ala. 270, 239 So. 2d 194 (1970), the Alabama Supreme Court was faced with a will which left the estate to the divorced second wife with a gift over to a church if she predeceased him. Subsequent to the execution of the will, a divorce ensued. The children of the first marriage argued that the church should not receive the estate because the contingency expressed in the will, the death of the divorced second wife, had not occurred. A statute, similar to sec. 853.11(3), revoked the gift to the wife. The Alabama Supreme Court apparently found several reasons persuasive to hold that the testator intended the church to take the wife's share if the wife was, for any reason, unable to take under the will: (1) the testator did not intend to die intestate; (2) the testator made no provision for the children of his former marriage and they would not share in the estate unless the court ruled that the law of intestacy was applicable; and (3) although the statute did not specifically provide that property prevented from passing to a divorced spouse through revocation by divorce should pass as if such spouse had failed to survive the testator, the court intimated that the statute might be read to reach this result unless a contrary intention was apparent in the will. In ruling for the church the court stated, "In view of our statute [revoking the bequest to the divorced spouse] and the presumptions we must indulge [against intestacy], we cannot follow the construction of the will contended for by [the heirs]. To do so would bring about intestacy and defeat the intent

of the testator with respect to the disposition of his property." 239 So. 2d at 197.

Similarly in *In Re Estate of Fredericks*, 311 So. 2d 376 (Fla. 2d Dist. Ct. App. 1975), cert. denied, 320 So. 2d 394 (Fla. 1975), the will bequeathed the estate to the wife, with a gift over to the Shriner's Hospital if the wife predeceased the testator. After the execution of the will, the testator and his wife were divorced; she survived him. A Florida statute barred her from taking her share. In holding for the hospital and against the heir the court stated, "In our judgment, the applicable provisions of the will manifest a clear intention on the part of [the testator] to prefer his wife first, but after her the Shriner's Hospital for Crippled Children. The divorce took the wife out of the picture just as surely as would her death." 311 So. 2d at 379.

In contrast to cases in which courts have invoked intent to give effect to the gift over, some courts, presented with fact situations substantially similar to the case before us and to the cases described above, conclude that they were unable to perceive any clear and unmistakable testamentary intent that the gift over should take effect if the spouse is *for any reason* unable to take the share provided in the will. These courts conclude that they are unable to determine that the testator's intent at the time of the execution of his will was other than expressed by the plain meaning of the language used," that is, that the spouse predecease the testator. If the divorce is the reason that the spouse is unable to take the share provided in the will and the divorced spouse survives the testator, the bequest must fail. Using this reasoning, courts have struck down the gifts over.[7]

[7] *See, e.g., In re Estate of McLaughlin*, 11 Wash. App. 320, 523 P.2d 437 (1974); *In re Estate of Harrison*, 21 Wash. App. 282, 585 P.2d 187 (1978); *In re Estate of Freeman*, 651 P.2d

We conclude that in cases such as the case at bar, it would be fruitless to attempt to determine whether the testator intended the gift over to take effect if the wife failed to take her share for any reason whatsoever, or whether the testator intended the gift over to take effect only if the wife predeceased him. The court would be engaging in speculation. The will before the court is clear and unambiguous. It establishes a simple testamentary disposition: everything to the wife if living, otherwise the estate is divided among three named persons. In the case at bar we do not have ambiguity in language; we have oversight by the testator or attorney. The will fails to make any specific provision for the eventuality which occurred, namely, a divorce and the revocation by statute of the divorced spouse's share under the will. There is no indication that the testator gave any thought to the situation before the court. On the one hand, the testator might have intended the property to pass to the contingent beneficiaries if the spouse survived but did not take the property. The persons or entities named in the will are obviously parties

1071 (Okla. Ct. App. 1982); *In re Estate of Lampshire*, 57 Misc. 2d 332, 292 N.Y.S.2d 578 (1968), and the cases collected in Annot., *Wills—Failure of Gift to Divorced Spouse*, 74 A.L.R.3d 1108, 1120–23 (1976). *See also Porter v. Porter*, 286 N.W.2d 649, 656 (Iowa 1979) (dissenting opinion);

Although cases in other jurisdictions have cited *In re Estate of Rosecrantz*, 183 Wis. 643, 198 N.W. 728 (1924), as holding that a gift over will not be given effect where the former spouse survives the testator, *Rosecrantz* is not applicable to the fact situation before us. In *Rosecrantz* a son's share in the trust established by his father could be released if the son's wife predeceased him. The son was divorced. The court in *Rosecrantz* refused to interpret a will so that a divorce was the equivalent of civil death. Here we are interpreting a statute, not a will. Furthermore, the divorce involved in *Rosecrantz* was that of a son of the testator, not that of the testator.

the testator wanted to receive property under the will. On the other hand, the testator might have intended that the gift over not be given effect if a divorced spouse survived the testator. In such a situation the testator might have preferred that the property pass by intestate succession.

The language of the will in this case does not provide any clues regarding the testator's intent. There is no evidence concerning the circumstances surrounding the execution of the will and there is no extrinsic evidence in the record to help construe the will.[8]

Nor do the usual rules of construction help us discern the testator's intent here. One rule of construction is that there is a presumption against intestacy, a presumption that the testator intends to dispose of his entire estate. A corollary of this rule of construction is that if a will is capable of alternate interpretations, one of which causes property to pass by intestate succession and the other causes it to pass by will, the interpretation resulting in intestacy will not be adopted. Another corollary of this rule of construction is the doctrine of gift by implication.[9] These rules point toward

---

[8] In some cases, unlike this one, the court may rely on particular language in the will or extrinsic evidence to determine that the testator intended that the gift over not be given effect if the divorced spouse survived the decedent. In *McFarlen v. McFarlen,* 536 S.W.2d 590 (Tex. Civ. App. 1976), the will provided that in the event my wife predeceases me, "in that event and in that event only" the estate was to go to the daughter. In *Russell v. Johnston,* 327 N.W.2d 226 (Iowa 1982), the court found the testator's intent by looking at changes he made in insurance policy beneficiaries.

[9] In view of our holding we need not discuss the contingent residuary beneficiary's assertion that she is entitled to the bequest under the doctrine of gift by implication. For a discussion of this doctrine see 2 MacDonald, *Wisconsin Probate Law* sec. 15A:5, pp. 406–407 (8th ed. 1983).

giving the property to the beneficiary named in the will. Conversely, the express language in the will conditions the gift over on the death of the spouse, and a gift over if the spouse has not died contravenes the explicit testamentary language. Furthermore, the presumption against intestacy may not be of great significance in this case since the testator did not change his will after the death of his parents; their share would pass according to the laws of intestacy.

Although many courts use the intent of the testator approach, we conclude that, given the facts of the case presently before the court, any attempt by us to divine the testator's intent regarding the disposition of his property in the event of a divorce and his divorced wife's surviving him would be speculative. As the circuit court observed, a court which engages in a search for intent in this kind of case engages in tortured and artificial reasoning to reach what the court views as a desirable or equitable distribution of the estate. We are unwilling to embark on the task of determining the testator's intent in this case.

A third approach would establish a rule of construction to apply to cases such as the one presently before the court. This rule could involve either (1) construction of the testamentary term "predecease" to mean, as a matter of law, the death of the spouse; or (2) construction of sec. 853.11(3) to make divorce the equivalent of the death of the spouse.

Under a rule of will construction, a court could conclude that since the contingency set forth in the will, namely, the death of the spouse, did not occur, the testator's estate cannot be distributed according to a testamentary gift over contingent upon the death of the spouse. The gift over would thus not take effect if the divorced spouse were alive but would take effect if the divorced spouse did in fact predecease the testator.

Under a rule of statutory construction, a court could conclude that the divorced spouse whose bequest has been revoked under sec. 853.11 is presumed to have predeceased the testator for purposes of construing the will and giving effect to the gift over.

Both rules of construction have the advantage of certainty and administrative convenience. It is irrelevant under either construction whether the gift over is to a former mother-in-law, stepchildren, one or more of the testator's children, or the testator's favorite charity.

There are, however, two factors leading us to reject the adoption of the rule of will construction. First, this construction runs contrary to what many believe is the intent of most decedents,[10] namely, that a testator probably intends that a gift over be given effect whenever the spouse cannot take, whatever the reason. Since divorce takes the spouse out of the picture as surely as death, it does not seem logical to tie the disposition of the estate to the death of the divorced spouse who is no longer a qualified beneficiary. The effect of this rule of construction is to give preference to the laws of intestacy over a testamentary dispositional scheme.

More important for us, we conclude that this rule of will construction operates in a manner which is contrary to sec. 853.11(3). Sec. 853.11(3) deals with revocation by operation of law, that is, revocation of a provision in the will in favor of the testator's spouse by operation of law on the occurrence of a specified event. The legislature in adopting sec. 853.11 made clear that it intended to abandon the doctrine of revocation by operation of law except for those situations falling within sec. 853.11(2), (3). The legislature rejected as the public policy of this state the doctrine that every significant change of circumstances operates to revoke a will. Sec.

[10] We know of no empirical data which supports this belief.

853.11(4) expressly states that "[a] will is revoked only as provided in this section." See also Wis. Legislative Council 1969 Report, vol. III, Judiciary Committee Bill on Probate Code, sec. 853.11, Comment, p. 65, 13 Wis. Leg. C. Rep. (1967–69).

A gift over in the event of the death of the primary beneficiary is a common provision in many wills. By looking only to the actual death of the divorced spouse we would be adopting a rule of law that would operate on the occurrence of a divorce to revoke numerous will provisions other than those in favor of the spouse. The court would be saying, in effect, that by operation of law divorce revokes the gift over if the spouse survives the testator. Neither the wording of the statute nor its legislative history supports this result.

We conclude that the legislature intended that, for purposes of interpreting the will, the divorced spouse whose bequest has been revoked under sec. 853.11 is presumed to have predeceased the decedent. We reach this conclusion even though sec. 853.11 does not contain the following provision incorporated in sec. 2–508 of the Uniform Probate Code: "Property prevented from passing to a former spouse because of revocation by divorce passes as if the former spouse failed to survive the decedent. . . ." Unif. Probate Code sec. 2–508, 8 U.L.A. 122 (1983). The Uniform Probate Code, unlike sec. 853.11, expressly establishes a rule of law for the devolution of property prevented from passing to the wife, that rule being that the property should pass under the will as if the spouse had not survived the testator.

The heir in this case argues that by adopting sec. 853.11(3) the legislature impliedly rejected sec. 2–508 of the Uniform Probate Code. The heir has misread the legislative history.

Sec. 853.11(3) is part of the Wisconsin Probate Code which was introduced in the legislature in 1967 and passed, with modifications, in 1969.[11] *See* Wisconsin Legislative Council, vol. I, General Report, and vol. III, Judiciary Committee Bill on Probate Code (1969), 13 Wis. Leg. C. Rep. (1967–69). The 1967 draft of the Uniform Probate Code did not contain a provision stating that the divorced spouse was to be considered civilly dead. Rather, the early working drafts of the Uniform Probate Code relating to revocation by divorce were similar to sec. 853.11(3).[12] The Uniform Probate Code containing the provision treating the divorced spouse as having predeceased the testator was not approved by the National Conference of Commissioners on Uniform State Laws and by the American Bar Association until 1969, the same year the Wisconsin Probate Code was adopted.[13]

[11] The Wisconsin Probate Code was the product of an extended study by the Probate Code Committee of the Real Property, Probate and Trust Law Section of the Wisconsin State Bar begun in 1963. Introductory Comment, Wisconsin Probate Code (West Pub. Co. 1967) (microfiche, drafting file 1967 AB 280, Legislative Reference Bureau, State Capitol, Madison, Wis.). The committee examined Wisconsin law, the law of other states, and the Model Probate Code. The Model Probate Code's provision relating to revocation by divorce is similar to sec. 853.11(3). The Model Probate Code was the product of work by a subcommittee of the American Bar Association working from 1940 to 1946 in cooperation with the research facilities of the University of Michigan Law School. *See* Simes, Model Probate Code (1946).

[12] The documents of the Wisconsin Probate Code Committee show that the committee was aware of the on-going efforts of the American Bar Association and the Conference of Commissioners on Uniform State Laws to update the Model Probate Code and promulgate a Uniform Probate Code.

[13] In 1968 and 1969, the working drafts of the Uniform Probate Code were submitted for public comment, and editorial and policy changes were made in the draft. It was during this stage of revision that the language in question was added to sec. 2–508

Considering the legislative history of Wisconsin Probate Code and sec. 2–508 of the Uniform Probate Code, we cannot conclude that the Wisconsin legislature impliedly rejected sec. 2–508 of the Uniform Probate Code.

Rather, we conclude that the language of sec. 2–508 of the Uniform Probate Code as to the divorced spouse being treated as having predeceased the testator sets forth the intention of the Wisconsin legislature and the public policy underlying sec. 853.11 (3). The public policy underlying sec. 853.11 is that a divorce revokes only the gift in favor of the divorced spouse; that a divorce does not revoke the entire will; and that the grounds for revocation set forth in sec. 853.11 are exhaustive.

Other courts have interpreted statutes comparable to sec. 853.11(3) as meaning that the divorced spouse should, as a matter of law, be treated as having predeceased the testator.[14] Thus in *McGuire v. McGuire,*

(that property prevented from passing to a spouse because of revocation by divorce passes as if the divorced spouse had predeceased the testator) was proposed. In August of 1969, the conference and the ABA adopted the Uniform Probate Code with this addition to sec. 2–508. The following chronology indicates this relation between developments in Wisconsin and those in the Conference on Uniform Laws:

March 1, 1967—AB 270, precursor of bill eventually passed (SB 5), was defeated in the Senate after having passed the Assembly; Jan. 13, 1968—Wis. Legislative Council appoints members to interim Wisconsin Probate Code Advisory Committee; July 22, 1968—Second Tentative Draft considered by Conference on Uniform Laws in Philadelphia (does not contain addition to sec. 2–508); Nov. 6, 1968—last meeting of Wisconsin Probate Code Advisory Committee; Jan. 6, 1969—SB 5 introduced by Legislative Council and referred to Judiciary Committee; June 6, 1969—SB 5 passed by Senate; Aug. 1–8, 1969—final draft of Uniform Probate Code (draft containing addition to sec. 2–508) approved in Dallas; Nov. 5, 1969—SB 5 passed by Assembly; Dec. 22, 1969—SB 5 signed by Governor.

[14] *See, e.g., Russell v. Estate of Russell,* 216 Kan 730, 534 P2d 261, 264 (1975); *Calloway v. Estate of Gasser,* 558 S.W.2d 571,

275 Ark. 432, 631 S.W.2d 12 (1982), a case presenting a fact situation substantially the same as that presented in the case at bar, the Arkansas Supreme Court concluded that Arkansas' equivalent to sec. 853.11(3) required that the contingent beneficiaries take under the will. The court said:

"The clear meaning of the words used in the statute is that any bequest to the former spouse is void but the remainder of the will remains in effect. Therefore, the stepchildren were the residuary legatees and the proper parties to receive under the will. It is not necessary for us to try to reach the intent of the testator because the statute solves that problem for us. In view of the obvious effect of the statute we see no reason to embark upon a long discussion in order to decide this case." 631 S.W. 2d at 14.[15]

We hold that under the facts and the will provisions in this case, the property which was prevented from passing to a divorced spouse under sec. 853.11(3) passes as if the divorced spouse failed to survive the testator. For the reasons set forth, we reverse the judgment of the circuit court and remand the cause to the circuit court for entry of judgment in accordance with this opinion.

*By the Court.*—Judgment reversed; cause remanded.

---

575 (Tex. Civ. App. 1977). Again, these cases appear to have used more than one approach.

[15] This reasoning was rejected in *Estate of Lampshire*, 57 Misc. 2d 332, 292 N.Y.S.2d 578 (1968). The court said:

"We must assume that the commissioner, in revising the law, considered the various forms of statutes in different States. The Statute as enacted did not in word or intent have any reference to deeming the divorced spouse civilly dead. . . . [I]t is quite possible that there has been a legislative gap in this statute, especially if it was enacted with the intention of considering the divorced spouse civilly dead. We are not prepared to take any liberties with the statute but must adhere strictly thereto." 57 Misc. 2d at 334, 335.

WILLIAM G. CALLOW, J. (dissenting). I disagree
with the majority's conclusion that the effect of sec.
853.11(3), Stats., for purposes of construing the will in
this case, is that the divorced spouse is, as a matter of
law, presumed to have predeceased the testator. The
result reached by the majority runs directly counter to
the plain meaning of the language of the testator's will
and also does violence to the plain meaning of sec.
853.11(3) by legislating into that statute a provision
never enacted by the legislature. Accordingly, I dissent.

The majority concedes that the will before the court
in this case is clear and unambiguous. (Page 35.)
A will which is clear and unambiguous does not need
construction when the will and the law are not in
conflict. The will clearly states that the gift over
will take effect *only* if the testator's wife has prede-
ceased him or dies within six months after the testator's
death. Because the contingency of the wife's death did
not occur, I believe the gift over fails and the property
must pass according to the laws of intestacy.

By establishing a rule of statutory construction that
a divorced spouse whose bequest has been revoked under
sec. 853.11(3), Stats., is presumed to have predeceased
the testator, the majority is, in effect, engrafting the
provisions of sec. 2–508 of the Uniform Probate Court
(UPC) onto the Wisconsin Probate Code. Contrary to
the majority's statement that the language of sec. 2–508
of the UPC sets forth the intention of the Wisconsin
legislature and the policy underlying sec. 853.11(3)
(page 41), I believe that judicial engrafting of sec.
2–508 onto sec. 853.11(3) runs counter to the legis-
lature's intent in enacting the statute. Because the
documents of the Wisconsin Probate Code Committee
indicate that the committee was aware of ongoing devel-
opments in the promulgation of a Uniform Probate
Code (page 40, n. 12), it is reasonable to assume that

the committee was aware of the addition of sec. 2–508 to the working draft of the UPC. If the legislature had desired to enact sec. 2–508 or a similar provision, it could have done so—either at the time Wisconsin's Probate Code was enacted in 1969 or at any time thereafter. Amendment of the statute should be left to the legislature and should not be done by this court.

I also disagree with the majority's conclusion that it would be fruitless to attempt to divine the testator's intent regarding the disposition of his property in the event of a divorce. The language of the will clearly states that in order for the gift over to take effect the testator's wife must predecease him or die within six months after his death. In light of the will's specific language, I believe the testator's intention is abundantly clear. The gift over was not to take effect if the testator's wife was still alive. Since none of the events under which the gift over was to take effect has occurred, the gift over must fail. Any contrary interpretation of the will provisions, and especially the majority's interpretation, frustrates the intent of the testator and violates prior holdings of this court which stated that the paramount object of will construction is ascertainment of the testator's intention. *See, e.g., In re Estate of Ganser,* 79 Wis. 2d 180, 255 N.W.2d 483 (1977).

Graef's will was made early in his marriage, more than thirty years before his death. The will provided his wife would be his primary beneficiary if she survived him. If not, his property was to be divided equally among his parents and his wife's mother. His wife's predeceasing him was the condition precedent to such a distribution under the terms of the will. At the time of Graef's death, Pearl Graef was still alive but was no longer his wife. Following their divorce, Graef had a

right to rely on the terms of sec. 853.11(3), Stats., which denied Pearl the right to inherit under his will. There is no dispute in this case that, under the statute, the provisions of the will in favor of Pearl Graef were revoked. Since Pearl could not inherit under the statute and since she clearly was not dead and her death was a condition precedent to her mother's right to take under the will, I believe Graef could also rely on the proposition that his property would descend as intestate property.

In *Estate of Rosecrantz,* 183 Wis. 643, 647, 198 N.W. 728 (1924), this court stated: "We do not understand by what process of reasoning the conclusion can be reached that the termination of the marital relations is equivalent to death in a matter of survivorship." While the majority attempts to distinguish *Rosecrantz* because in that case the divorce involved a son of the testator and not the testator himself (p. 34, n. 7), I believe the reasoning in *Rosecrantz* does apply to the present action. It is simply unreasonable to equate divorce with death in matters of survivorship.

The majority considers three alternative approaches to the question presented. One approach is to treat a gift over to a blood relative of the spouse (but not of the testator) or a natural bounty of the spouse's affections as a " 'provision in a will *in favor of the testator's spouse*' " and, therefore, consider the provision revoked by the very terms of sec. 853.11(3), Stats. (Page 29.)

While I believe no interpretation of the will is necessary because of the express language of both the statute and the will, the above-stated alternative would be far more equitable than the result reached by the majority. The result reached by the majority frustrates what Graef directed and deprives his family of one-third of

his estate. At the time of Graef's divorce, their property was, under Wisconsin law, subject to division. It is reasonable to assume that Pearl Graef received a fair share of the marital property. The majority now permits Pearl Graef's mother to inherit one-third of William Graef's remaining estate.

Pearl Graef is a person who is the natural object of her mother's bounty. She, therefore, in addition to already having received a fair share of the marital property at the time of the divorce, is likely to receive one-third of William Graef's remaining estate through inheritance from her mother. The majority skirts this issue by stating, "no extrinsic evidence was presented in this case . . . to show that the bequest to Emma Garrett was in fact in favor of the testator's spouse." (Page 31.) I believe no extrinsic evidence is needed because the presumption of Wisconsin statutes and case law dealing with descent is that children are the natural objects of their parents' bounty.

The majority opinion reverses the well-reasoned decision of the trial court. It changes Wisconsin case law, ignores the clear intent of the legislature, and defeats the intent of the testator who set forth explicit terms in the will. I would affirm the judgment of the circuit court.

I am authorized to state that Justices Louis J. Ceci and William A. Bablitch join in this dissenting opinion.