555 A.2d 75

Elizabeth BLOOM, John O. Sowash, and Mary M. Banks, Appellants,

v.

Stanley SELFON, Individually and as Executor of the Last Will and Testament of Kathryn B. Orstein, Deceased, Appellee.

Supreme Court of Pennsylvania.

Argued Dec. 7, 1988.

Decided March 3, 1989.

William J. Myers, Huntingdon, for appellants.

Robert F. Claraval, Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Superior Court which affirmed an order of the Court of Common Pleas of Cumberland County approving a scheme of distribution under the last will and testament of Kathryn B. Orstein. The issue presented is whether the courts below properly determined that, under the terms of the will, decedent's estate passed to an uncle of decedent's ex-husband. The pertinent facts are as follows.

Kathryn B. Orstein married W. Lee Orstein in 1966, and, in 1978, she executed a will containing the following provisions:

I—I direct the payment of all my just debts and funeral expenses out of my estate as soon as may be practical after my death.

II—I devise and bequeath all of my estate of whatever nature and wherever situate unto my husband, W. Lee Orstein.

III—Should my said husband predecease me, then I devise and bequeath all of my estate of every nature and wheresoever situate unto my issue per stirpes.

IV—If my said husband predeceases me and we have no issue, then all of my estate shall be distributed to my husband's uncle, Stanley Selfon.

V—I appoint my husband, W. Lee Orstein, Executor of this, my Last Will and Testament. Should my said husband fail to qualify or cease to act as such, then I appoint the said Stanley Selfon to act in this capacity. Neither of my personal representatives shall be required to post bond in this or any jurisdiction.

The Orsteins became divorced in 1981, but the foregoing will was never revised. In 1984, Kathryn B. Orstein died without issue. She was survived by W. Lee Orstein and Stanley Selfon.

Inasmuch as decedent became divorced after her will was executed, provisions in paragraphs II and V of the will pertaining to W. Lee Orstein were rendered inoperative through 20 Pa.C.S. § 2507(2), which provides:

(2) Divorce. If the testator is divorced from the bonds of matrimony after making a will, all provisions in the will in favor of or relating to his spouse so divorced shall thereby become ineffective for all purposes.

Also, due to the fact that decedent left no issue, paragraph III of the will was inoperative.

Consequently, when the will was submitted to probate, letters testamentary were issued to Selfon. Selfon, acting in reliance upon the provision in paragraph IV of the will, distributed all of the proceeds of the estate to himself. Subsequently the decedent's two sisters and brother, appellants herein, brought an action seeking declaratory relief in the Orphans' Court Division of the Court of Common Pleas of Cumberland County. They alleged that they, rather than Selfon, were entitled to the proceeds of the estate. Specifi-

cally, it was claimed that the bequest to Selfon was subject to a condition precedent that W. Lee Orstein predecease Kathryn B. Orstein, and, since that condition was not fulfilled, a complete intestacy resulted. As the sole intestate heirs of the decedent, appellants assert entitlement to the estate's assets. Relief was denied by the Court of Common Pleas. The Superior Court affirmed. *Bloom v. Selfon,* 366 Pa.Super. 283, 531 A.2d 12 (1987). We granted allowance of appeal.

The will in question follows a common testamentary scheme by designating the husband to receive all of the wife's property, and appointing an alternate beneficiary in recognition of the possibility that the husband might predecease the wife. The issue raised in this appeal is whether the courts below erred in determining that, for purposes of the alternate beneficiary provision, divorce from testatrix's spouse could be equated with the death of testatrix's spouse. Integral to the resolution of this issue is the question of whether it is of significance that the alternate beneficiary is a relative of testatrix's ex-spouse.

Prior to the adoption, in 1947, of the statutory predecessor to 20 Pa.C.S. § 2507(2), supra, it was the law in this Commonwealth that the right of a former spouse to take under a will was not affected by divorce. *Jones's Estate,* 211 Pa. 364, 60 A. 915 (1905). The 1947 legislation rendered ineffective, upon divorce, testamentary provisions favoring one's spouse. As stated in the Official Comment accompanying 20 Pa.C.S. § 2507(2), this legislation was based upon section 53 of the Model Probate Code and reflected recognition of the fact that most persons who fail to change or revoke their wills after a divorce would want to have their wills changed by operation of law. The legislature did not, however, take action to curtail the effectiveness of bequests made to the relatives of an ex-spouse. Certainly, there is a possibility that, after a divorce, one's feelings towards an ex-spouse's relatives might be changed and that the frequency of contacts with such relatives might be reduced. This is a highly individualized matter, however, and it cannot be said that the likelihood of estranged feelings is

sufficiently high as to warrant nullification of such gifts by operation of law.

In the present case, the testatrix did not mention her intestate heirs at all in her will but rather designated her husband's uncle as both an alternate beneficiary and an alternate executor. Many would view this as an unusual testamentary scheme, for one's brother and sisters would normally be expected to take precedence over a husband's uncle in receiving a share of one's bounty. Such a scheme may evidence an unusually close bond between testatrix and the husband's uncle, or, perhaps, the lack of such a bond between testatrix and her own family. Experience teaches, certainly, that individuals form bonds of friendship in patterns that often cannot be predicted or understood. ("A sympathetic friend can be quite as dear as a brother." Homer, *Odyssey* (9th c. B.C.)). Other explanations for the chosen scheme might also be imagined, such as variations in the needs of the potential beneficiaries. Whatever the reason may have been for the designated scheme, there can be no doubt that the reason may well have outlasted testatrix's marriage. Given these considerations, we do not believe that distribution of the estate to an ex-husband's uncle is a result to be specifically avoided in construing the alternate beneficiary clause in paragraph IV of the will.

■ This Court has repeatedly enunciated the principles governing interpretation of wills, emphasizing that the keystone is ascertainment of the intent of the testator as expressed in the actual language of the will. As stated in *Jacobson Estate*, 460 Pa. 118, 122–123, 331 A.2d 447, 449 (1975).

No rule is more settled in regard to wills than the general rule that the testator's intent, if not unlawful, must prevail. The common law has consistently proclaimed that the testator's intent is the crux in interpreting every will and that intent must be ascertained from the language chosen by the testator. Courts will not search for the testator's intent beyond "the four corners of his will" when the language of that document is sufficiently clear and unambiguous so as to lead the court

to believe it can with reasonable certainty effect a distri-
bution in accordance with the testator's desires.

(Citations omitted). Accord, *Schwenk Estate*, 507 Pa. 409,
415, 490 A.2d 428, 431 (1985); *Toland Estate*, 495 Pa. 482,
486, 434 A.2d 1192, 1194 (1981); *Baker Estate*, 495 Pa. 522,
525, 434 A.2d 1213, 1215 (1981); *Felice Estate*, 487 Pa. 342,
352, 409 A.2d 382, 387 (1979).

The clear intent to be discerned from the present will is
that the husband's uncle, Selfon, was given precedence over
testatrix's brother and sisters, who, in fact, were not intend-
ed to receive anything under testatrix's will. Nevertheless,
appellants argue that the bequest to Selfon was made
absolutely conditional upon the death of testatrix's hus-
band, in that testatrix stated in paragraph IV of the will
that the estate should pass to Selfon "[i]f my said husband
predeceases me." We believe this language does not evi-
dence an intent that Selfon should be denied receipt of the
bounty where the former husband is still living, where, due
to divorce, the latter is disqualified from taking under the
will. The effect of the language in question was analyzed
correctly in the decision below, wherein the Superior Court
stated:

> These words, however, may also be viewed as part of a
> broader scheme, i.e., a method by which the testatrix
> describes her order of preference regarding who should
> enjoy her estate. It is overwhelmingly likely that the
> only reason for the predecease clause was to provide a
> fallback beneficiary in case the husband was no longer
> available to take under the will. Once the husband is
> barred by divorce from taking the gift, the time of his
> death no longer has any apparent significance. There-
> fore, as the trial judge noted in his opinion, "[c]ommon
> sense, in part, impels us to the conclusion that [the
> predecease clause] ... is less a precondition and more a
> provision to address the situation where the primary
> beneficiary could or would not [take under the will] ..."

366 Pa.Super. at 289, 531 A.2d at 15.

Construction of the predecease clause as transitional lan-
guage in the will's recitation of fallback beneficiaries, rath-

er than as language making the gift conditional, is indeed compelled by a common sense understanding of the unmistakable testamentary scheme of the will. It would have been highly illogical for testatrix to have made disposition of her estate dependent upon the death of a former spouse who is no longer a qualified beneficiary. We find no indication in the will that use of the phrase, "[i]f my said husband predeceases me," was intended to mean anything other than, "if my husband is no longer able to take as a beneficiary." To conclude otherwise would be to place undue technical emphasis upon testatrix's use of the word, "predeceases," with the result that the testamentary scheme would be defeated. As stated in *Hill Estate*, 432 Pa. 269, 278–79, 247 A.2d 606, 612 (1968) (quoting *March Estate*, 357 Pa. 216, 219, 53 A.2d 606, 606 (1947)), " 'Words or phrases will be rejected when they have the effect to subvert or defeat testator's whole testamentary scheme and divest the bounty from those whom he obviously intended to benefit.' "

Further, if the predecease clause were interpreted as causing the gift to Selfon to fail, thus resulting in a complete intestacy, the law's general presumption against intestacy would be transgressed. Although this presumption cannot be invoked where it would result in a distorted construction of the language in a will, its realm of proper application has been described as follows: "It merely means that if the testator's language is reasonably susceptible of two constructions, one of which will produce and the other avoid an intestacy, the latter interpretation or construction will be adopted unless it defeats the testator's intention." *Beisgen Estate*, 387 Pa. 425, 436, 128 A.2d 52, 57 (1956). See also *Farrington Will*, 422 Pa. 164, 168, 220 A.2d 790, 793 (1966); *Conlin Estate*, 388 Pa. 483, 493, 131 A.2d 117, 121 (1957).

Finally, it may be noted that the construction here accorded the predecease clause is consistent with that adopted by the majority of other jurisdictions which have considered such clauses. 366 Pa.Super. at 289–90, 531 A.2d at 15

(survey of case law from other jurisdictions); *Graef Estate,* 124 Wis.2d 25, 368 N.W.2d 633 (1985) (survey of case law). It is also in accord with Section 2–508 of the Uniform Probate Code, which, although not a part of the statutory law of this Commonwealth, may be referred to as providing some useful perspectives into the examination of questions left unaddressed by our statutory scheme. Section 2–508 provides, "Property prevented from passing to a former spouse because of revocation by divorce or annulment passes as if the former spouse failed to survive the decedent...."

Thus, we conclude that the present testamentary scheme did not, through the predecease clause in question, make the gift to Selfon conditional upon the actual death of testatrix's ex-husband. Distribution of the estate proceeds to Selfon was, therefore, properly approved by the courts below.

ORDER AFFIRMED.

LARSEN, J., concurs in the result only.