J-A10036-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: ESTATE OF REGINA R. LLOYD   :     IN THE SUPERIOR COURT OF
                                           :           PENNSYLVANIA
                                           :
                                         :
APPEAL OF: J.G. WENTWORTH       :
ORIGINATIONS, L.L.C.               :         No. 898 WDA 2015

Appeal from the Order May 13, 2015
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): 02-11-1612

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PANELLA, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED AUGUST 09, 2016**

Appellant, J.G. Wentworth Originations, L.L.C., appeals from the order entered in the Allegheny County Court of Common Pleas, Orphans' court Division, in favor of Arthur Constable, III, executor of the estate of Regina Lloyd ("Regina Lloyd") and Todd T. Jordan, Esquire, guardian of the estate for Anthony Lloyd, a minor ("Anthony Lloyd"), which denied Appellant's exceptions and Metropolitan Life Insurance Company's ("MetLife") cross-exceptions and relieving MetLife of liability for any periodic payments made to the estate of Michael Lloyd ("Michael Lloyd") and to Appellant.[1]  We affirm.

The Orphans' court opinion sets forth the relevant facts and procedural history of this case as follows.

---

[1] Michael Lloyd, MetLife, and Metropolitan Insurance and Annuity Company ("MIAC") did not participate in this appeal.

Regina Lloyd and her son, Anthony Lloyd, were involved in an automobile accident in Florida on November 11, 2002. At the time of the accident Regina Lloyd, who suffered a severe and permanent injury, was married to Michael Lloyd, who was not involved in the accident. Regina Lloyd, and Michael Lloyd, individually and as parents and natural guardians of their minor child Anthony Lloyd, filed a complaint on June 3, 2003, against the municipality, the city of Fernandina Beach. This lawsuit was settled by the city of Fernandina Beach and its insurers, Ranger Insurance Company and Preferred Governmental Issuance Trust. A Settlement Agreement was executed in November of 2003 and stated [that] specific amounts of money…would be paid in consideration of the settlement including payments to Regina Lloyd of $6,469.00 monthly for thirty years. The obligation to make the monthly payment was assigned to [MetLife] and its subsidiary [MIAC]. MetLife began to make the required monthly payments of $6,469.00 to Regina Lloyd on December 1, 2003.

In September of 2004, Regina, Michael, and Anthony moved to Pennsylvania. Thereafter, Regina Lloyd filed for a divorce and a divorce decree was granted for Regina Lloyd and Michael Lloyd on September 12, 2007, in Allegheny County, Pennsylvania. Regina Lloyd and Michael Lloyd did not enter into a property settlement agreement in connection with the divorce.

Regina Lloyd died in Pennsylvania on March 11, 2011. Her will was probated in Pennsylvania. On March 15, 2011, a letter was sent to MetLife stating that Arthur Constable III is the executor of the estate, and informing MetLife of the death of Regina Lloyd, and the 2007 divorce. MetLife requested a copy of the divorce decree with property settlement, especially [requesting] any reference to the Annuity. In response to this request, MetLife was sent a copy of the divorce decree and the Will of Regina Lloyd. MetLife responded with a letter requesting the entire divorce decree with the property settlement, showing the reference to the annuity and how it is to be disbursed, and stating that it must have the signature of the judge and the date. The letter warned that if this document was not provided, MetLife would proceed with the beneficiary

designation on file. MetLife sent four requests for this information and the last request was marked "Final Request." The last letter stated that it would make the funds payable to the beneficiary on file unless MetLife heard back from the addressee within [thirty] days. The final letter was dated July 26, 2011. The letters from MetLife were addressed to Arthur R. Constable, Jr., at an address that was not the correct address for Arthur R. Constable, Jr., but was the address given for correspondence in the initial letter sent to MetLife after Regina Lloyd's death. MetLife's letters of April 22, 2011, June 10, 2011, and July 26, 2011, received no response. This [c]ourt is troubled by the failure of the Executor to respond to the letters from MetLife. Since MetLife is excused from liability under 20 Pa.C.S.A. § 6111.2, [its] payments to a former husband-beneficiary make the Executor's failure to respond irrelevant.

MetLife contacted Michael Lloyd on November 1, 2011. On September 28, 2012, in response to prior correspondence with MetLife, Michael Lloyd sent MetLife a notarized handwritten letter providing personal identity information and stating that he was the rightful beneficiary of Regina Lloyd's Annuity and that there was never any kind of property settlement in their divorce. Thereafter, MetLife remitted to Michael Lloyd past payments from the date of Regina Lloyd's death and began paying Michael Lloyd the amount of $6,469.00 monthly.

On May 7, 2013, Michael Lloyd agreed to sell/transfer part of the future payments to [Appellant]. Michael Lloyd transferred $2,200.00 of the monthly annuity payments for [twenty] years to [Appellant] for $200,000.00. This [sale]/transfer was approved by [a] Florida state court on June 25, 2013. The Petition For Court Approval of a Transfer of Structure Settlement Payment Rights filed with the Florida [c]ourt in May of 2013, …makes no mention that Michael Lloyd was not the injured party. It further makes no mention of his divorce from and subsequent death of Regina Lloyd. The Florida [c]ourt [o]rder dated June 25, 2013, …set forth in finding number [one], that the transfer sought does not contravene "Any Federal or State Statute." Had the Florida [c]ourt been made aware of Regina's Pennsylvania divorce from Michael Lloyd as

- 3 -

well as her death in 2011, that court may not have approved the transfer. Notice of the Florida court proceeding had not been given to the estate of Regina Lloyd, or to the guardians of Anthony Lloyd prior to this transfer.

On October 31, 2013, Michael Lloyd attempted to sell/transfer another portion of the annuity to [Appellant]. This time [Appellant] notified Arthur and Angela Constable (the guardians of the person of Anthony Lloyd) of the impending [sale]/transfer and it was objected to by the attorney for [Anthony Lloyd], as well as the attorney for [Regina Lloyd]. Based on the objections, this second [sale]/transfer was withdrawn by [Appellant]. Michael Lloyd died in Florida on December 13, 2013.

The instant matter was commenced in this [c]ourt on November 26, 2013, when the Estate of Regina Lloyd filed a Petition for Citation to Show Cause Why Annuity Payments Should Not Be Paid to Estate. MetLife and Michael Lloyd were the named Respondents. On February 24, 2014, [Appellant] filed an Emergency Petition to Intervene, which was granted on March 21, 2014. On June 10, 2014, MetLife filed a Petition for Rule to Interplead by Notice to Plaintiff Estate of Regina R. Lloyd and [Appellant] and by Citation to Claimant Estate of Michael R. Lloyd, which interpleader, on July 23, 2014, this [c]ourt granted. On July 17, 2014, Anthony Lloyd filed a Petition to Intervene, which this [c]ourt granted. On August 21, 2014, this [c]ourt [o]rdered that Petitioner, Estate of Regina Lloyd, [Appellant], Intervenor Guardian of Estate of Anthony Lloyd and Claimant, Estate of Michael Lloyd [were] enjoined from commencing or further prosecution of any action in any court against MetLife for periodic payments under the subject Annuity, except as a party to the above entitled action. Currently all monthly annuity funds have been interpleaded into this [c]ourt and fall under the jurisdiction of this [c]ourt.

(Orphans' Court Opinion, filed January 16, 2015, at 1-4). After conducting a bench trial, the Orphans' court entered an opinion and order on January 16, 2015, finding 20 Pa.C.S.A. § 6111.2 applied under these circumstances and

all subsequent periodic payments made pursuant to the annuity contract were to be paid to the estate of Regina Lloyd as the contingent beneficiary, and ordering MetLife to distribute all accumulated and future annuity payments to Regina Lloyd's estate as well as ordering Appellant to return to Regina Lloyd's estate any funds received. MetLife and MIAC filed a motion for post-trial relief on January 23, 2015, seeking modifications to the Orphans' court order regarding their liability to the parties in the action. On January 29, 2015, Appellant filed exceptions to the Orphans' court order. MetLife and MIAC filed cross exceptions to Appellant's exceptions on February 5, 2015. Appellant filed amended exceptions on February 11, 2015. On April 21, 2015, counsel for Anthony Lloyd and Regina Lloyd filed motions to strike MetLife and MIAC's motion for post-trial relief and Appellant's exceptions. The Orphans' court entered an order on May 15, 2015, (a) denying Appellant's exceptions and MetLife and MIAC's cross-exceptions, (b) relieving MetLife and MIAC of liability for any periodic payments made to Michael Lloyd and to Appellant, and (c) stating its January 16, 2015 decision/opinion remains in effect. Appellant timely filed a notice of appeal on June 9, 2015. Appellant filed a motion for stay of orders pending appeal on June 10, 2015, which the Orphans' court granted on June 17, 2015. The Orphans' court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant did not file one.

Appellant raises one issue for our review:

WHETHER THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, ORPHANS' COURT DIVISION, ERRED AS A MATTER OF LAW IN RULING THAT 20 [PA.C.S.A] § 6111.2 APPLIED IN THIS CASE TO RENDER INEFFECTIVE THE DESIGNATION OF MICHAEL LLOYD AS THE BENEFICIARY OF THE ANNUITY CONTRACT AT ISSUE.

(Appellant's Brief at 2).

Appellant argues Section 6111.2 does not apply under these circumstances because MIAC owned the annuity contract pursuant to a structured tort settlement agreement, and Regina Lloyd was unable to revoke the beneficiary designation of the annuity contract without MIAC's approval because she did not personally own the annuity contract. Appellant claims the only instance in which Section 6111.2 applies is when an individual owns an insurance policy, annuity contract, or other contract and that individual has the unilateral legal right and power to revoke the designation of the individual's ex-spouse as a beneficiary at the time of the individual's death. Appellant insists the language of the tort settlement agreement controls to whom the periodic payments must be made. Under that agreement, Appellant emphasizes the "claimants," which included both Regina Lloyd and Michael Lloyd, possessed the joint power to revoke or make any beneficiary designations, so the designation of Michael Lloyd as a beneficiary was not unilaterally revocable by Regina Lloyd upon her death. Appellant further contends the tort settlement agreement remains in effect because it contains the continuing obligation to make periodic payments to

Michael Lloyd, and the assignment agreement simply carries forward those obligations found in the tort settlement agreement, with MIAC as the assignee and Ranger Insurance Company as the assignor. Appellant argues Michael Lloyd released his loss of consortium claim when he signed the tort settlement agreement in 2003 and the Orphans' court incorrectly relied on its equitable powers in interpreting the contracts and the statute at issue, upon deciding that it would be unjust to allow Michael Lloyd to block Regina Lloyd's beneficiary designations beyond their marriage because the application and interpretation of Section 6111.2 is purely a question of law. Appellant alternatively argues that if Section 6111.2 applies and renders Michael Lloyd's initial designation as beneficiary of the annuity contract ineffective, his estate would still be entitled to the periodic payments because the right to the payments arose out of the tort settlement agreement and he was named the default beneficiary under that agreement. Appellant concludes the Orphans' court decision should be reversed. We disagree.

Regarding estate matters, our standard of review of an order of the Orphans' court is deferential:

> [W]e will not reverse unless there is a clear error of law or an abuse of discretion. Our scope of review is also limited: we determine only whether the court's findings are based on competent and credible evidence of record.

*In re Estate of Karschner*, 919 A.2d 252, 255-56 (Pa.Super. 2007) (quoting *In re Estate of Westin*, 874 A.2d 139, 142 (Pa.Super. 2005)).

"An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." *Silver v. Pinskey*, 981 A.2d 284, 291 (Pa.Super. 2009) (*en banc*) (quoting *Mencer v. Ruch*, 928 A.2d 294, 297 (Pa.Super. 2007)).

As a general rule, the law of the chosen forum governs all procedural matters. *Commonwealth v. Sanchez*, 552 Pa. 570, 716 A.2d 1221 (1998). A dispute concerning the applicable substantive law, however, compels a choice of law analysis. *Wilson v. Transport Ins. Co.*, 889 A.2d 563, 571 (Pa.Super. 2005). "Substantive law is the portion of the law which creates the rights and duties of the parties to a judicial proceeding, whereas procedural law is the set of rules which prescribe the steps by which the parties may have their respective rights and duties judicially enforced." *Id.* A court conducts the choice of law analysis under the choice of law rules of the forum state. *See Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 21, 203 A.2d 796, 805 (1964).

In Pennsylvania, a choice of law analysis includes a preliminary test: "the first step in a choice of law analysis under Pennsylvania law is to determine whether a conflict exists between the laws of the competing states." *Budtel Associates, LP v. Continental Cas. Co.,* 915 A.2d 640, 643 (Pa.Super. 2006).

**§ 5327. Determination of foreign law**

**(a) Notice.—**A party who intends to raise an issue concerning the law of any jurisdiction or governmental unit thereof outside this Commonwealth shall give notice in his pleadings or other reasonable written notice.

**(b) Materials to be considered.—**In determining the law of any jurisdiction or governmental unit thereof outside this Commonwealth, the tribunal may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the rules of evidence.

**(c) Court decision and review.—**The court, not jury, shall determine the law of any governmental unit outside this Commonwealth. The determination of the tribunal is subject to review on appeal as a ruling on a question of law.

42 Pa.C.S.A. § 5327. To ascertain the law of a sister state, a tribunal may judicially notice the foreign law, and may inform itself of such law by considering any relevant material or source, regardless of whether it was submitted under the rules of evidence. 42 Pa.C.S.A. § 5327(b). The operation of foreign law presents a question of law, rather than fact. 42 Pa.C.S.A. § 5327(c).

"[W]here the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the [c]ourt should avoid the choice-of-law question." *Titeflex Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 88 A.3d 970, 979 (Pa.Super. 2014), *appeal denied*, 629 Pa. 638, 105 A.3d 737 (2014) (quoting *Williams v. Stone*, 109 F.3d 890, 893 (3rd Cir. 1997), *cert*

*denied*, 522 U.S. 956, 118 S.Ct. 383, 139 L.Ed.2d 299 (1997)). If the court finds a true conflict exists, the court must then decide which state has the greater interest in the application of its law, including which state had the most significant contacts or relationship to the action. ***Budtel Associates, LP, supra***.

The Decedents, Estates and Fiduciaries Code governing the effect of a divorce on a beneficiary designation[2] provides in pertinent part:

> **§ 6111.2. Effect of divorce or pending divorce on designation of beneficiaries**
>
> **(a) Applicability.—**This section is applicable if an individual:
>
> > (1) is domiciled in this Commonwealth;
> >
> > (2) designates the individual's spouse as beneficiary of the individual's life insurance policy, annuity contract, pension or profit-sharing plan or other contractual arrangement providing for payments to the spouse; and
>
> > \* \* \*
>
> > (i) at the time of the individual's death is divorced from the spouse[.]
>
> \* \* \*
>
> **(b) General rule.—**Any designation described in subsection (a)(2) in favor of the individual's spouse or former spouse that was revocable by the individual at the individual's death shall become ineffective for all purposes

---

[2] With respect to the designation of beneficiaries in an insurance policy, this section has been held as preempted by the federal Employee Retirement Income Security Act ("ERISA") at 29 U.S.C.A. § 1001 *et seq.* ***See In re Estate of Sauers***, 613 Pa. 186, 32 A.3d 1241 (2011). The present case does not involve ERISA. Therefore, the state statute remains applicable.

and shall be construed as if the spouse or former spouse had predeceased the individual….

20 Pa.C.S.A. § 6111.2.

Under Pennsylvania law, a loss of consortium claim arising from a marital union has been described as:

[A] right growing out of the marriage relationship which the [spouses] have respectively to the society, companionship and affection of each other in their life together.  As thus defined and limited, any interference with this right of consortium by the negligent injury to one spouse, should afford the other spouse a legal cause of action to recover damages for that interference.

**Burns v. Pepsi-Cola Metro. Bottling Co.,** 510 A.2d 810, 812 (Pa.Super. 1986) (citation omitted)).  This Court has previously limited the application of marital consortium damages to the time between a spouse's injury and her death.  **See, e.g., Amato v. Bell & Gossett**, 116 A.3d 607, 626 (Pa.Super. 2015) (reiterating general rule that loss of consortium damages "are limited to the time between the spouse's injury and his death"); **Linebaugh v. Lehr**, 505 A.2d 303 (Pa.Super. 1986) (holding decedent's widow had no separate claim for loss of consortium in addition to her right to recover for wrongful death).  We observe our sister jurisdictions agree that the right of consortium tracks the existence of the marital relationship and terminates at its dissolution by death or divorce.  **See, e.g., Sawyer v. Bailey**, 413 A.2d 165, 167 (Me. 1980); **Archie v. Hampton**, 112 N.H. 13, 287 A.2d 622 (1972); **Walden v. Coleman**, 105 Ga.App. 242, 124 S.E.2d 313 (1962); **Burk v. Anderson**, 232 Ind. 77, 109 N.E.2d 407 (1952).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Frank J. Lucchino, we conclude Appellant's issue merits no relief. The Orphans' court opinion comprehensively discusses and properly disposes of the question presented. (*See* Orphans' Court Opinion at 5-14) (finding: Pennsylvania has most significant contacts or relationship to this matter and has greater interest in protecting property rights of its citizens, as opposed to Florida's interest in this matter which is more tenuous; therefore, Pennsylvania law should govern; language of tort settlement agreement does not require that Michael Lloyd remain beneficiary of annuity contract; language of tort settlement agreement explains that any payments made after Regina Lloyd's death "shall be made to such person or entity as shall be designated in writing by Claimants to insurer or…Insurer's assignee", and that "[i]f no person or entity is so designated by Claimants…such payments shall be made to Michael R. Lloyd"; tort settlement agreement provided payments to Regina Lloyd only; tort settlement agreement does not prohibit change in beneficiary or require Regina Lloyd and Michael Lloyd to jointly designate beneficiary after initial beneficiary designation; once claimants under tort settlement agreement chose Michael Lloyd as beneficiary, that provision of tort settlement agreement was fulfilled and it no longer controlled Regina Lloyd's ability to change beneficiary designations; assignment agreement between MIAC and Ranger Insurance Company, which followed tort

settlement agreement, names only Regina Lloyd and her son as claimants; thus, there is conflicting language on who is "claimant" between tort settlement agreement (which includes Michael Lloyd as claimant) and MIAC and Ranger Insurance Company's assignment agreement; language of tort settlement agreement was not incorporated by reference into any subsequent agreements; court must consider all relevant agreements to reach fair and just decision; only document from which any party derives present claim to payments is annuity contract; moreover, all of Michael Lloyd's rights to be compensated for loss of consortium ended upon divorce; it would be unjust to give Michael Lloyd any right to block Regina Lloyd's beneficiary designations beyond time of their marriage; further, if court were to agree with Appellant that tort settlement agreement continued to control rights and obligations of Regina Lloyd and Michael Lloyd after 2003, then court would also consider paragraph of tort settlement agreement which prohibits claimants (Regina Lloyd and Michael Lloyd) from having power to sell, mortgage, encumber, or anticipate periodic payments, by assignment or otherwise; Florida court made no finding regarding enforceability of this non-assignment provision; thus, court gives little weight to Appellant's argument that tort settlement agreement continued to control rights and obligations concerning annuity payments; more importantly, per 20 Pa.C.S.A. § 6111.2 of Decedents, Estates and Fiduciaries Code, entire annuity payments were due to Regina Lloyd's estate upon her death because her designation of

Michael Lloyd as beneficiary became ineffective upon her death; application of statute does not require Regina Lloyd to own annuity contract; statute applies when individual's spouse is designated as beneficiary in individual's annuity contract; annuity contract belonged to Regina Lloyd because she was receiving annuity payments as payee and was "measuring life (annuitant)"; fact that changes in beneficiary designation required approval from MetLife does not mean designation of Michael Lloyd as beneficiary was irrevocable upon Regina Lloyd's death; there was no evidence presented at trial that MetLife would have denied request to change beneficiary following Regina Lloyd's divorce; because beneficiary designation was revocable upon Regina Lloyd's death, per Section 6111.2, designation of Michael Lloyd as beneficiary became ineffective for all purposes after Regina Lloyd's death and should have been construed as though Michael Lloyd predeceased Regina Lloyd; notably, Michael Lloyd was not injured in car accident that left Regina Lloyd paralyzed, and they were married for less than five years after accident; Michael Lloyd's loss of consortium claim terminated upon divorce; when Michael Lloyd purportedly assigned his "interest" in annuity contract to Appellant, Michael Lloyd had no interest in annuity contract to assign; had Appellant read closely Michael Lloyd's structured settlement application, Appellant would have noticed that Michael Lloyd listed date of Regina Lloyd's death and their divorce incorrectly, where Michael Lloyd listed date of divorce as more than three years after Regina Lloyd's death; Appellant was

not *bona fide* purchaser and should have known with reasonable diligence that Michael Lloyd was no longer beneficiary of Regina Lloyd's annuity contract after their divorce and Michael Lloyd had no interest to sell, based on Pennsylvania law, where Section 6111.2 dictates that, upon Regina Lloyd's death, designation of Michael Lloyd as beneficiary became ineffective and was to be construed as if Michael Lloyd had predeceased Regina Lloyd; all subsequent annuity payments were due to be paid to Regina Lloyd's estate as contingent beneficiary). Accordingly, we affirm on the basis of the Orphans' court opinion.

With respect to Appellant's claim that the tort settlement agreement remains in effect, we observe Michael Lloyd's right to loss of consortium extinguished upon his divorce from Regina Lloyd because his right tracked the existence of their marriage. Therefore, Michael Lloyd's only claim giving rise to any rights under the tort settlement agreement likewise ceased upon the divorce. **See Linebaugh, supra**. The Orphans' court properly found that Michael Lloyd had no rights at all under the tort settlement agreement to transfer. As the sophisticated party in this matter and possessing the ability to conduct a thorough due diligence for the transaction, Appellant must bear the brunt of the empty contract it purchased, and its claim merits no relief. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/2016

Circulated 07/15/2016 01:36 PM

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION


RE:  ESTATE OF
     REGINA R. LLOYD,
     DECEASED

NO: 1612 of 2011


OPINION


FILED BY:
   JUDGE FRANK J. LUCCHINO

DATE FILED: JUNE 17, 2015

COPIES SENT BY EMAIL TO:

Thomas J. Dempsey, Jr., Esquire
428 Forbes Avenue
Suite 1400
Pittsburgh, PA 15219
tdempseyjr@sikovandlove.com

Jack B. Cobetto, Esquire
Reed Smith, LLP
225 Fifth Avenue
Pittsburgh, PA 15222
jcobetto@reedsmith.com

Peter D. Post, Esquire
Ogletree, Deakins
One PPG Place, Suite 1900
Pittsburgh, PA 15222
peter.post@ogletreedeakins.com

Todd T. Jordan, Esquire
Tener, Van Kirk
301 Grant Street, Suite 2100
Pittsburgh, PA 15219
ttjordan@tenervankirk.com

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

RE: ESTATE OF                          NO: 1612 of 2011
    REGINA R. LLOYD,
    DECEASED

## O P I N I O N

The instant matter was commenced in this Court on November 26, 2013, when the Estate of Regina Lloyd filed a Petition for Citation to Show Cause Why Annuity Payments Should Not Be Paid to Estate. MetLife and Michael Lloyd were the named Respondents. On February 24, 2014, Wentworth filed an Emergency Petition to Intervene, which was granted on March 21, 2014. On June 10, 2014, MetLife filed a Petition for Rule to Interplead by Notice to Plaintiff Estate of Regina R. Lloyd and Intervenor Wentwoth and by Citation to Claimant Estate of Michael R. Lloyd, which interpleader, on July 23, 2014, this Court granted. On July 17, 2014, Anthony Lloyd filed a Petition to Intervene, which this Court granted. Subsequently, answers, new matter, and replies to new matter were filed by the parties.

A trial was held before this Court on December 9, 2014, and post-trial memorandums were submitted by the parties. On January 15, 2015, this Court issued an opinion and order disposing of the matter. On January 29, 2015, Wentworth filed timely exceptions to this Court's order, and a motion for post-trial relief. The exceptions filed by Wentworth were denied on May 13, 2015, upon review of the exceptions and cross-exceptions, and after argument in open court thereon. Wentworth filed a timely appeal to the Pennsylvania Superior Court on June 9, 2015.

In accordance with Pa.R.A.P. 1925(a), the judge who entered the order appealed from must specify in writing the place in the record where the reasons for the order appear. The reasons for this Court's Order dated May 13, 2015, denying the Appellant's Exceptions appear in this Court's Opinion and Order of Court dated January 15, 2015, a copy of which is attached hereto.

By The Court:

_____, S.J.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

RE:   ESTATE OF
      REGINA R. LLOYD,
      DECEASED

NO: 1612 of 2011

OPINION and ORDER OF COURT

FILED BY:
  JUDGE FRANK J. LUCCHINO

JANUARY 15, 2015

COPIES SENT BY EMAIL TO:

Thomas J. Dempsey, Jr., Esquire
428 Forbes Avenue
Suite 1400
Pittsburgh, PA 15219
tdempseyjr@sikovandlove.com

Jack B. Cobetto, Esquire
Reed Smith, LLP
225 Fifth Avenue
Pittsburgh, PA 15222
jcobetto@reedsmith.com

Peter D. Post, Esquire
Ogletree, Deakins
One PPG Place, Suite 1900
Pittsburgh, PA 15222
peter.post@ogletreedeakins.com

Todd T. Jordan, Esquire
Tener, Van Kirk
301 Grant Street, Suite 2100
Pittsburgh, PA 15219
ttjordan@tenervankirk.com

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

RE:   ESTATE OF                                      NO: 1612 of 2011
      REGINA R. LLOYD,
      DECEASED

## OPINION

The facts of this matter are largely undisputed. Regina Lloyd and her son, Anthony Lloyd, were involved in an automobile accident in Florida on November 11, 2002. At the time of the accident Regina Lloyd, who suffered a severe and permanent injury, was married to Michael Lloyd, who was not involved in the accident. Regina Lloyd, and Michael Lloyd, individually and as parents and natural guardians of their minor child Anthony Lloyd, filed a complaint on June 3, 2003, against the municipality, the city of Fernandina Beach. This law suit was settled by the City of Fernandina Beach and its insurers, Ranger Insurance Company and Preferred Governmental Issuance Trust. A Settlement Agreement was executed in November of 2003, and stated specific amounts of money that would be paid in consideration of the settlement, including payments to Regina Lloyd of $6,469.00 monthly for thirty years. The obligation to make the monthly payment was assigned to Metropolitan Life Insurance Company and its subsidiary Metropolitan Insurance and Annuity Company (hereinafter, collectively "MetLife"). MetLife began to make the required monthly payments of $6,469.00 to Regina Lloyd on December 1, 2003.

1

In September of 2004, Regina, Michael, and Anthony moved to Pennsylvania. Thereafter, Regina Lloyd filed for a divorce and a divorce decree was granted for Regina Lloyd and Michael Lloyd on September 12, 2007, in Allegheny County, Pennsylvania. Regina Lloyd and Michael Lloyd did not enter into a property settlement agreement in connection with the divorce.

Regina Lloyd died in Pennsylvania on March 11, 2011. Her will was probated in Pennsylvania. On March 15, 2011, a letter was sent to MetLife stating that Arthur Constable III is the executor of the estate, and informing MetLife of the death of Regina Lloyd, and the 2007 divorce. MetLife requested a copy of the divorce decree with property settlement, especially any reference to the Annuity. In response to this request, MetLife was sent a copy of the divorce decree and the Will of Regina Lloyd. Met Life responded with a letter requesting the entire divorce decree with the property settlement, showing the reference to the annuity and how it is to be disbursed, and stating that it must have the signature of the judge and the date. The letter warned that if this document was not provided, MetLife would proceed with the beneficiary designation on file. MetLife sent four requests for this information and the last request was marked "Final Request". The last letter stated that it would make the funds payable to the beneficiary on file unless MetLife heard back from the addressee within 30 days. The final letter was dated July 26, 2011. The letters from MetLife were addressed to Arthur R. Constable, Jr., at an address that was not the correct address for Arthur R. Constable, Jr., but was the address given for correspondence in the initial letter sent to MetLife after Regina Lloyd's death. MetLife's letters of April 22, 2011, June 10, 2011, and July 26, 2011 received no response. This Court is troubled by the failure of the

2

Executor to respond to the letters from MetLife. Since MetLife is excused from liability under 20 Pa.C.S. 6111.2, their payments to a former husband beneficiary makes the Executor's failure to respond irrelevant.

MetLIfe contacted Michael Lloyd on November 1, 2011. On September 28, 2012, in response to prior correspondence with MetLife, Michael Lloyd sent MetLife a notarized handwritten letter providing personal identity information and stating that he was the rightful beneficiary of Regina Lloyd's Annuity and that there was never any kind of property settlement in their divorce. Thereafter, MetLife remitted to Michael Lloyd past payments from the date of Regina Lloyd's death and began paying Michael Lloyd the amount of $6,469.00 monthly.

On May 7, 2013, Michael Lloyd agreed to sell/transfer part of the future payments to J.G. Wentworth Originations, LLC (hereinafter "Wentworth"). Michael Lloyd transferred $2,200.00 of the monthly annuity payments for 20 years to Wentworth for $200,000.00. This sell/transfer was approved by the Florida state court on June 25, 2013. The Petition For Court Approval of a Transfer of Structure Settlement Payment Rights filed with the Florida Court in May of 2013, (Exhibit P) makes no mention that Michael Lloyd was not the injured party. It further makes no mention of his divorce from and subsequent death of Regina Lloyd. The Florida Court Order dated June 25, 2013, (Exhibit Q) set forth in finding number 1, that the transfer sought does not contravene "Any Federal or State Statute". Had the Florida Court been made aware of Regina's Pennsylvania divorce from Michael Lloyd as well as her death in 2011, that court may not have approved the transfer. Notice of the Florida court proceeding had not been

3

given to the estate of Regina Lloyd, or to the guardians of Anthony Lloyd prior to this transfer.

On October 31, 2013, Michael Lloyd attempted to sell/transfer another portion of the annuity to Wentworth. This time Wentworth notified Arthur and Angela Constable (the guardians of the person of Anthony Lloyd) of the impending sell/transfer and it was objected to by the attorney for the Guardian, as well as the attorney for the Executor of Regina Lloyd's estate. Based on the objections, this second sell/transfer was withdrawn by Wentworth. Michael Lloyd died in Florida on December 13, 2013.

The instant matter was commenced in this Court on November 26, 2013, when the Estate of Regina Lloyd filed a Petition for Citation to Show Cause Why Annuity Payments Should Not Be Paid to Estate. MetLife and Michael Lloyd were the named Respondents. On February 24, 2014, Wentworth filed an Emergency Petition to Intervene, which was granted on March 21, 2014. On June 10, 2014, MetLife filed a Petition for Rule to Interplead by Notice to Plaintiff Estate of Regina R. Lloyd and Intervenor Wentwoth and by Citation to Claimant Estate of Michael R. Lloyd, which interpleader, on July 23, 2014, this Court granted. On July 17, 2014, Anthony Lloyd filed a Petition to Intervene, which this Court granted. On August 21, 2014, this Court Ordered that Petitioner, Estate of Regina Lloyd, Intervenor Wentworth, Intervenor Guardian of Estate of Anthony Lloyd and Claimant, Estate of Michael Lloyd are enjoined from commencing or further prosecution any action in any court against MetLIfe for periodic payments under the subject Annuity, except as a party to the above entitled action. Currently all monthly annuity funds have been interpleaded into this Court and fall under the jurisdiction of this Court.

The first issue before this Court is whether Florida law or Pennsylvania law is applicable to determine the effect a divorce has on a husband beneficiary. This Court has concluded that Pennsylvania has the greater interest in the application of its law, and Pennsylvania has the most significant contacts or relationship to this matter, therefore, Pennsylvania law governs this matter. Sheard v. J.J. Deluca Co, Inc., 92 A.3d 68, 76 (Pa.Super. 2014). The decedent, Regina Lloyd, and her son, Anthony Lloyd, moved to Pennsylvania in September of 2004. Also, Michael Lloyd moved to Pennsylvania and lived here for many years. Regina Lloyd executed a will in Pennsylvania on March 16, 2006. She was domiciled in Pennsylvania at the time of her divorce from Michael Lloyd on September 12, 2007, as well as when she died on March 11, 2011. Their child, Anthony Lloyd, has continued to be domiciled in Pennsylvania. The Commonwealth of Pennsylvania has a distinct interest in protecting the property rights of its citizens. (Andress v. Zoning Bd of Adjustment of City of Philadelphia, 410 Pa. 77, 188 A.2d 709 (1963)).

The State of Florida's interest in this matter is more tenuous. The Settlement Agreement followed by the 2003 Model Qualified Assignment Release and Pledge Agreement and Addendum (hereinafter "MetLife Assignment Agreement") were executed in Florida in 2003. The Agreements stemmed from settlement of the personal injury action that was filed in Florida on June 3, 2003. There is currently no dispute about the Settlement Agreement or the MetLife Assignment Agreement. These agreements completed the personal injury matter in 2003 and are not at issue in the instant estate matter. Thus the State of Florida's connection to this matter was

5

concluded in 2003 and Florida's interest is not as strong as Pennsylvania's interest in this matter.

The second issue is whether the Settlement Agreement required the beneficiary designation to remain Michael Lloyd. This Court has determined that the Settlement Agreement does not require that Michael Lloyd remain the beneficiary of the subject annuity. The language of Settlement Agreement itself does not require that the beneficiary designation remain Michael Lloyd. Wentworth argues that the Settlement Agreement includes the settlement of Michael Lloyd's loss of consortium claim and therefore Michael Lloyd must remain the beneficiary, unless there is a written change submitted by both Regina Lloyd and Michael Lloyd as claimants. However, the wording of the Settlement Agreement does not contain such a requirement.

The pertinent section of the Settlement Agreement states as follows:

Beneficiary

Any payments to be made after the death of Regina Lloyd shall be made to such person or entity as shall be designated in writing by Claimants to the Insurer or the Insurer's Assignee. If no person or entity is so designated by Claimants, or if the person designated is not living at the time of Regina's death, such payments shall be made to **Michael R. Lloyd**
(emphasis in original) (Exhibit A)

The first sentence allows claimants to designate a beneficiary. The second sentence names Michael Lloyd if no other beneficiary has been named or if the named beneficiary predeceases Regina Lloyd. A review of the Settlement Agreement shows that lumps sums were paid to Regina Lloyd only. Michael Lloyd was not the named recipient for any payments. Michael Lloyd was not required to be named as beneficiary. The Beneficiary provision does not require Michael R. Lloyd to continue in perpetuity to be the beneficiary. It does not prohibit a change in beneficiary, nor does the plain

6

language require both Regina Lloyd and Michael Lloyd to jointly designate a beneficiary after the initial beneficiary had been designated. When a contract is clear and unambiguous, only the writing itself needs to be examined. In re Estate of Hoffman, 54 A.3d 903 (Pa.Super. 2012). Once claimants chose a beneficiary this provision was fulfilled and it no longer controlled Regina Lloyd's beneficiary designations. This Court notes that the MetLife Assignment Agreement, which followed the Settlement Agreement only names Regina Lloyd and her son Anthony Lloyd, as claimants, and is executed only by them. Michael Lloyd is not named in that Assignment Agreement and does not have any rights thereunder. There is conflicting language as to who is a claimant between the language of the Settlement Agreement and the MetLife Assignment Agreement.

Furthermore, the language of the Settlement Agreement was not incorporated by reference into any of the subsequent agreements. The Settlement Agreement, MetLife Assignment Agreement, Request for MetLife Structured Settlement Fixed Annuity and the Annuity contract were all separate, independent agreements. This Court must consider all the agreements to reach a fair and just decision. Performance of the Settlement Agreement was complete in 2003. The only document from which any party derives a present claim to payments is the Annuity contract. It is the Annuity contract that obligates MetLife to pay monthly the sum of $6,469.00.

Moreover, all rights of Michel Lloyd to be compensated for loss of consortium ended upon divorce. Pursuant to 23 Pa.C.S. §3503, the effect of a divorce decree is that all property rights which were dependent upon the marital relation are terminated,

7

except those that are vested rights, unless the court expressly provides otherwise in the divorce decree, which did not occur. Michael Lloyd's right to consortium terminated upon divorce. It was not a vested right because by it's nature it could not extend indefinitely. This Court, as a court of equity, recognizes that it would be unjust to give Michael Lloyd the right to block Regina's beneficiary designations beyond the time of their marriage.

Additionally, if this Court were to agree with Wentworth and decide that the language of the Settlement Agreement continued to control the rights and obligations of Regina Lloyd and Michael Lloyd after 2003, then this Court would consider the entire Settlement Agreement, including section (3), (claimants Rights to Payments) which states that claimants (Regina Lloyd and Michael Lloyd) shall not have the power to sell, mortgage, encumber, or anticipate the periodic payments, or any part thereof, by assignment or otherwise. The Florida Court in paragraph D of its Order (Exhibit Q), made no finding regarding the enforceability of any non-assignment provisions contained in the original Settlement Agreement or related documents. The non-assignment provision in the Settlement Agreement was not used by MetLife or Wentworth to prevent Michael Lloyd from selling part of the periodic payments he was receiving. Therefore, this Court gives little weight to Wentworth's argument that the Settlement Agreement continued to control the rights and obligations under the Annuity.

The third and most important issue is whether the application of 20 Pa.C.S. §6111.2 dictates the result in this matter. This Court concludes that pursuant to 20 Pa.C.S. §6111.2, upon the death of Regina Lloyd on March 11, 2011, her estate was entitled to all future annuity payments.

8

The effect of divorce on the designation of beneficiaries is governed by 20

Pa.C.S. §6111.2, which provides as follows:

(a) Applicability. – This section is applicable if an individual:
    (1) Is domiciled in this Commonwealth:
    (2) Designates the individual's spouse as beneficiary of the individual's...annuity contract...providing for payments to the spouse; and
    (3) Either:
        (I)    at the time of the individual's death is divorced from the spouse; ...

(a) General rule.- Any designation described in subsection (a)(2) in favor of the individual's spouse or former spouse that was revocable by the individual at the individual's death shall become ineffective for all purposes and shall be construed as if the spouse or former spouse had predeceased the individual, unless it appears the designation was intended to survive the divorce based on :
    (1) the wording of the designation;
    (2) a court order;
    (3) a written contract between the individual and the spouse or former spouse; or
    (4) a designation of a former spouse as beneficiary after the divorce decree has been issued

(a) liability. –
    (1) Unless restrained by court order, no insurance company ... shall be liable for making payments to a spouse or former spouse which would have been proper in the absence of this section.
    (2) Any spouse or former spouse to whom payment is made shall be answerable to anyone prejudiced by the payment.

Pursuant to the above statute, the estate or Regina Lloyd was entitled to the entire annuity payments upon the death of Regina Lloyd. It is undisputed that she was domiciled in Pennsylvania at her death.

Wentworth argues that it was not Regina Lloyd's annuity contract as is required in 20 Pa.C.S. §6111.2(a)(2), since the owner of the annuity was listed as MetLife Insurance and Annuity Company, rather than Regina Lloyd. The statute does not require the individual to own the annuity. The statute requires that the individual's spouse is designated as beneficiary in the individual's "annuity contract". This Court finds that the annuity contract belonged to Regina Lloyd since she was receiving the annuity payments as payee and she was the "measuring life (annuitant)". The fact that

9

she was not listed as owner of the annuity does not prevent this Court from determining that the phrase 'of the individual's annuity contract' applies to Regina Lloyd under 20 Pa.C.S. §6111.2(a)(2). The plain words of the statute do not require ownership.

Wentworth's other challenge to the application of 20 Pa.C.S. §6111.2(a)(2), is the claim that the designation of Michael Lloyd as beneficiary was not revocable by Regina Lloyd pursuant to the MetLife Assignment Agreement which states:

> Payee may request in writing that assignee change the payee and/or beneficiary designation under this agreement. Any change of the payee/beneficiary designation will only be made with the assignee's consent. Assignee's decision will be final...
> (Addendum #1 of Exhibit B)

The MetLife Assignment Agreement permits Regina Lloyd to request a change in beneficiary but Assignee (MetLife) is not obligated to approve the requested change. During the trial of December 9, 2014, Courtney Sedita, with the MetLife annuity department, testified that had Regina Lloyd submitted a written request to change the beneficiary, this request would have been forwarded to legal counsel for approval or rejection. Since Regina Lloyd is not listed as the owner of the annuity and did not have unrestricted right to change the beneficiary, Wentworth argues that the beneficiary designation was not revocable by Regina Lloyd and that 20 Pa.C.S. §6111.2, is not applicable to the instant matter. It must be kept in mind that the "ownership" of the Annuity in the name of a third party is solely for tax purposes.

This Court has determined that the beneficiary designation of Michael Lloyd was revocable despite the condition that MetLife had to approve any beneficiary change. The term "revocable" is not defined in the statute. When the words of a statute are clear and unambiguous they are presumed to be the best indication of legislative intent.

10

Chanceford Aviation v. Chanceford Twp. Bd. Of Supervisors, 592 Pa. 100, 923 A.2d 1099, 1104 (2007). Here, since the term "revocable" is not defined in the statute, the term will be given its ordinary meaning and common usage. (Osprey Portfolio, LLC v. Izett, 620 Pa. 274, 67 A.3d 749, (Pa. 2013). DeLellis v. Borough of Verona, 541 Pa. 3, 10, 660 A.2d 25, 28 (1995), quoted and followed by AMP Inc. v. Com, 578 Pa. 366 at 376, 852 A.2d 1161 at 1167 (2004)).

Black's Law dictionary, revised fourth edition, defines "revocable" as "susceptible of being revoked", and "revoked" as "to annul or make void by recalling or taking back, cancel, rescind, repeal, reverse". The term "revocable" does not require an unconditional right to cancel or withdraw. This Court finds that Regina Lloyd had the right to change the beneficiary designation with MetLife's approval. There was no evidence presented at the trial to indicate that MetLife would have denied a requested change in beneficiary to Regina Lloyd's estate after the divorce. Such a beneficiary change would have been consistent with Pennsylvania law, and MetLife would not have had any reason to deny the beneficiary change had it been requested. Since this Court finds the beneficiary designation was revocable, pursuant to 20 Pa.C.S. §6111.2(a)(2), the beneficiary designation of Michael Lloyd became ineffective for all purposes after the divorce and should have been construed as though Michael Lloyd predeceased Regina Lloyd.

The language of the statute lists several exceptions where it should not be assumed that the former spouse predeceased the individual because the designation was intended to survive the divorce, but none of the exceptions apply to the instant matter. The wording of the beneficiary designation did not indicate it was intended to

11

survive a divorce, nor was there a court order or an agreement between the parties indicating that the designation of Michael Lloyd as beneficiary was to survive a divorce.

Wentworth argues that the Settlement Agreement included the settlement of Michael Lloyd's loss of consortium claim and therefore his claim was intended to survive the divorce. Michael Lloyd was married to Regina Lloyd for less than five years after the accident which rendered her paralyzed. Since a consortium claim by its nature terminates upon divorce, it would be inequitable, resulting in unjust enrichment, to permit Michael Lloyd's consortium claim to survive beyond the divorce, entitling him to potential payment of more than $1,750,000 for injuries that occurred to his ex-wife. Michael Lloyd was not injured or involved in the accident for which the annuity payments are due. Any right to damages that Michael Lloyd acquired from the accident was due to his marriage to Regina Lloyd.

In 1992, when 20 Pa.C.S. §6111.2 was initially enacted, it was conceptually patterned after section 2507(2), Will modification by circumstances of divorce, which was enacted in 1947. Prior to 1947, the right of a former spouse to take under a will was not affected by divorce. The 1947 legislation rendered testamentary provisions that favored a person's spouse to become ineffective upon divorce, recognizing the fact that most people who fail to change or revoke their wills after a divorce would want to have their wills changed by operation of law. Bloom v. Selfon, 555 A.2d 75, 520 Pa. 519 (1989). This same reasoning can be applied to beneficiaries of annuity contracts, and was the purpose of 20 Pa.C.S. §6111.2.

Therefore, pursuant to 20 Pa.C.S. §6111.2, all annuity payments after the death of Regina Lloyd should have been paid to the estate of Regina Lloyd. At the time that the assignment from Michael Lloyd to Wentworth was approved by the court in Florida,

Michael Lloyd did not have any interest in the Annuity to assign. Regina Lloyd was divorced from Michael Lloyd at the time of her death in Pennsylvania so the beneficiary designation on her annuity became ineffective for all purposes and should have been construed by both MetLife and Wentworth as if Michael Lloyd had predeceased Regina Lloyd, in which case the annuity payments would go to the estate of Regina Lloyd.

Both MetLife and Wentworth had notice that Regina Lloyd and Michael Lloyd were divorced in Pennsylvania. MetLife had received notice of the divorce shortly after Regina Lloyd's death. Wentworth knew about the divorce and Regina's death, since the divorce information was on Michael Lloyd's application to sell a portion of the monthly annuity payments (Exhibit EE). Had Wentworth closely read the Structured Settlement Application, it would have noted that the date of divorce is listed as "11-17-2012" and Regina's date of death as "5-20-2009", some 3½ years prior to the divorce date set forth. Both dates are incorrect. This Court finds that Wentworth never read the "prior marital status information" on its application form as completed by Michael Lloyd. Had it done so numerous legal questions should have arisen in the mind of its employees. Wentworth was not a bonifide purchaser. Both companies had notice of the divorce and should have been aware that under Pennsylvania law a divorce has an effect on the designation of a spouse as a beneficiary of an annuity. Wentworth's headquarters are in Pennsylvania. Wentworth should have known that Michael Lloyd was not the beneficiary of Regina Lloyd's Annuity after the divorce, and Michael Lloyd did not have an interest to sell.

It is important to note that Wentworth withdrew its request for a second assignment by Michael Lloyd when the Florida Court received objections from counsel for Anthony Lloyd and from counsel for the executor of the estate. In fact, the purchase

13

agreement (Exhibit O) in section 5(B) permits Wentworth to cancel the agreement if the Petition for a Court order is ...opposed... Had Wentworth's Florida counsel given notice to Mr. and Mrs. Constable of the First Request for Court Approval, filed just five months earlier, Wentworth would likely have canceled that request.

MetLife, having had notice of the divorce prior to transferring monthly payments to Michael Lloyd and then acquiescing to the first assignment is not without some culpability. However, the provisions of 20 Pa.C.S. 6111.2 as enacted by the Pennsylvania Legislature excuses their liability.

In conclusion, pursuant to 20 Pa.C.S. §6111.2, upon the death of Regina R. Lloyd on March 11, 2011, the designation of Michael Lloyd as beneficiary was to be construed as if Michael Lloyd had predeceased Regina R. Lloyd, and all subsequent periodic Annuity payments were to be paid to the Estate of Regina Lloyd, as the contingent beneficiary. MetLife is relieved of liability under 20 Pa.C.S. §6111.2(a)(1), for any periodic payments made to Michael Lloyd and to Wentworth. All interpleaded funds and funds held in escrow in the instant matter shall be released and paid to the Estate of Regina Lloyd. All future periodic payments under the subject Annuity shall be paid to the Estate of Regina Lloyd.

This Court enters the following Order for the reasons stated herein.

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

## ORPHANS' COURT DIVISION

RE:  ESTATE OF
REGINA R. LLOYD,
DECEASED

NO: 1612 of 2011

## ORDER OF COURT

And Now, To Wit, this **15** day of January, 2015, in accordance with the foregoing Opinion, it is Ordered that MetLife distribute all accumulated and future periodic Annuity payments under Annuity Certificate No. 80451 to the Estate of Regina Lloyd.

It is further Ordered that Wentworth return to the Estate of Regina Lloyd any funds received under Annuity Certificate No. 80451.

BY THE COURT:

_____, S.J.

15